## CONTINUATION OF APPLICATION FOR A SEARCH WARRANT

I, Aaron Eastham, being duly sworn, depose and state the following:

1.      I make this Continuation in support of an application for a search warrant, authorizing investigators to examine five electronic devices described in Attachment A, for the purpose of extracting the records and information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have experience in investigating, apprehending, and prosecuting people involved in committing criminal offenses, including those who have used cellular devices in connection with those offenses. I am currently assigned to work federal violent criminal matters in the Muskegon and Muskegon Heights areas, and in that capacity I have experience with cases involving violations of federal gun and drug laws.

3.      This Continuation is based on personal knowledge and information from other law enforcement officers and agents. This Continuation is intended to show only that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE PLACE TO BE SEARCHED

4.      The property to be searched is (i) an Alcatel cellphone, black in color, model: 5005R, IMEI: 015495005109231 (the "**Alcatel Phone**"); a Motorola cellphone, black in color, model: XT1921-8, IMEI: 359543092851357 (the "**Motorola Phone**") and (iii) an LG cellphone, dark gray in color, with the word "cricket" written on the back (the "**LG Phone**"); (iv) a dark grey cellphone, with a single camera on the back in the center of the phone, and the word "cricket" printed on the rear of the phone (the "**Cricket Phone**"), and (v) an Apple iPhone, white in color, with a silver Apple logo in the center on the rear

of the phone (the "**Apple iPhone**"), hereinafter collectively referred to as the "**Devices**."

5.      The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying and extracting the electronically stored data described in Attachment B.

## PROBABLE CAUSE

6.      Based on my training and experience, and the facts set forth below, there is probable cause to believe that Demari Lepaul Thomas-Mathews ("THOMAS-MATHEWS"), in the Western District of Michigan, committed crimes that include violations of Title 18, United States Code, Sections 922(g)(1) [*Felon in Possession of a Firearm*] and 924(c) [*Possession of a Firearm in Furtherance of Drug Trafficking*] and Title 21, United States Code, Section 841(a)(1) [*Distribution and Possession with Intent to Distribute Controlled Substances*], and that evidence and instrumentalities of those crimes (described in Attachment B) will be found on the **Devices** (described in Attachment A).

7.      On November 22, 2020, the police responded to a shots-fired complaint in Muskegon County, Michigan. Upon arriving at the scene, they found numerous bullet holes through the exterior of a residence located at 1619 Manz Street in Muskegon, which was the place of the reported shooting. The front door of the residence was unlocked, so police entered the residence to check for victims.

8.      Witnesses told police they had heard multiple gunshots. Officers on the scene reviewed video footage from a neighbor's security camera, which showed what they believed to be 4 or 5 muzzle flashes going off from inside the residence at 1619 Manz Street, near the front of the house, which has three windows. The video did not portray anyone outside of the house shooting, but police located numerous shell casings in the

backyard of a nearby residence.

9.      Officers entered the residence to search for shooting victims and found THOMAS-MATHEWS in a bathtub in the bathroom. He did not have any apparent gunshot wounds, said the residence belonged to his friend, and denied living there. No one else was located in the home.

10.     Police obtained state court warrants to further search the residence and a Ford vehicle, parked nearby, to which THOMAS-MATHEWS had the keys. During this search, police found in the residence a semi-automatic pistol in a cabinet in the bathroom where they had found THOMAS-MATHEWS. The pistol was loaded with 13 rounds in a 15-round capacity magazine, plus one round in the chamber. Police later determined the pistol was registered to someone else.

11.     Police also found, directly next to the pistol, two plastic baggies containing a total of approximately 29.3 grams of crack cocaine, and one plastic baggie containing approximately 6.4 grams of powder cocaine. Police also found six additional 9mm bullets in a plastic bag on the top shelf of the same cabinet, and two cell phones sitting on top of the bathroom vanity—namely, the **Motorola Phone** and the **LG Phone**.

12.     Police found a digital scale in a bedroom.

13.     Police found and seized the **Alcatel Phone** and **Apple iPhone** from THOMAS-MATHEWS's person.

14.     Police found and seized the **Cricket Phone** from the Ford vehicle.

15.     Police found unopened mail on the kitchen table addressed to THOMAS-MATHEWS at 1619 Manz Street. In addition, four days before this incident, on November

18, 2020, police responded to a shooting at the same residence at 1619 Manz Street. A resident, Janetra Smith, had been shot in the arm. Smith told police that THOMAS-MATHEWS was her roommate.

16.     According law enforcement records, before November 2020, THOMAS-MATHEWS had been convicted of the numerous felonies within the State of Michigan, including a 2021 conviction for being a felon in possession of a firearm.

17.     On June 29, 2021, a federal grand jury returned an indictment against THOMAS-MATHEWS in this district, in Case No. 1:21-cr-124, for violating the following laws in connection with the above-described circumstances from November 2020: Title 18, United States Code, Sections 922(g)(1) [*Felon in Possession of a Firearm*] and 924(c) [*Possession of a Firearm in Furtherance of Drug Trafficking*] and Title 21, United States Code, Section 841(a)(1) [*Distribution and Possession with Intent to Distribute Controlled Substances*].

18.     The same indictment charges THOMAS-MATHEWS with committing the same three crimes on a different occasion, in April 2021. On that occasion, police conducted a traffic stop of a vehicle THOMAS-MATHEWS was driving, and found, in the vehicle, approximately 5.2 grams of cocaine base in a black backpack and a loaded pistol in the back seat in a position and orientation accessible to THOMAS-MATHEWS. Police also found, on THOMAS-MATHEWS's person, approximately $3,050 in cash. Another person was riding in the passenger seat of the vehicle, but s/he denied knowing about the drugs or firearm. THOMAS-MATHEWS told the police, as he was being arrested, that the vehicle and its contents belonged to him.

19.     Based on my training and experience, and communications with other law

enforcement personnel, I understand the following:

      a.      29.3 grams of crack cocaine and 6.4 grams of powdered cocaine are larger quantities of those controlled substances than a person would typically have for personal use, and are consistent with quantities used for distribution purposes.

      b.      People who distribute controlled substances often possess and use digital scales in connection with their drug dealing activities. This is because a controlled substance's price is typically determined by (i) the type of substance; and (ii) substance's weight. Accordingly, to provide an accurate price, drug dealers usually must weigh the drugs they sell.

      c.      Transactions for controlled substances are primarily conducted in cash. For this reason, people who sell controlled substances frequently have significant quantities of cash in their possession. Transactions for controlled substances may also be conducted using payment applications that can be accessed using cellphones, such as Venmo and PayPal.

      d.      People who distribute controlled substances often keep and use firearms during and in furtherance of their drug dealing activities. Specifically, drug dealers frequently use firearms to protect themselves from customers, rival drug dealers, or others who might (i) attack the drug dealer, or (ii) attempt to steal the dealer's drugs and cash. Drug dealers typically prefer to carry handguns for this purpose, as they are easier to conceal than long guns.

      e.      People who distribute controlled substances typically use cellphones in connection with their drug dealing activities, including to negotiate, plan, and

execute their drug transactions. Accordingly, cellphones within the possession, custody, or control of people who distribute controlled substances frequently contain evidence of drug trafficking. Such evidence may include communications regarding drug deals; photographs or videos of drugs, currency, firearms, or coconspirators; audio or video files reflecting or concerning drug transactions; and internet activity regarding drug transactions or firearms.

f.     People who distribute controlled substances often maintain and use multiple phones to facilitate their drug dealing activities.

g.     Cellphones may be used to access social media websites such as Facebook and Instagram, and people who distribute controlled substances often use social media to communicate with drug suppliers and users.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate forensic electronic evidence that establishes how the **Devices** were used, the purpose of the use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Devices** because:

a.     Data on the storage medium can provide evidence of a file that was

6

once on the storage medium but has since been deleted or edited, or of a deleted portion of a file .

    b.    Forensic evidence on a device can also indicate who has used or controlled the device, like user names, device locations, or account information.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    *Manner of execution.* Because this warrant seeks permission only to examine devices in law enforcement's possession, its execution does not involve the physical intrusion onto a premise. Accordingly, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.    I submit that this continuation supports probable cause for a search warrant authorizing the examination of the **Devices** described in Attachment A to seek the information described in Attachment B.